United States District Court
Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

L.M.,

Plaintiff,

v.

SSA COMMISSIONER, et al.,

Defendants.

Case No. 25-cv-08617-LB

**ORDER REMANDING FOR FURTHER PROCEEDINGS**

Re: ECF Nos. 10, 15

**INTRODUCTION**

Plaintiff L.M. applied for Social Security disability insurance benefits and disabled widow's benefits, contending that complications of her type II diabetes disabled her beginning January 1, 2020.[1] An administrative law judge issued a partially favorable decision: the plaintiff has been disabled since May 1, 2021, but was not disabled from January 1, 2020, through April 30, 2021.[2] The dispute about that earlier period matters mainly for the widow's-benefits claim: the

[1] Amended ALJ Decision – AR 18, 20. Citations are to the certified administrative record (AR), ECF No. 7. Citations to other filings are to the ECF-generated page numbers at the top of documents.

[2] AR 17–18, 28–29.

"prescribed period" for those benefits ended on November 30, 2020, so unless the plaintiff's disability began on or before that date, she is not entitled to widow's benefits at all.[3]

The parties cross-moved for summary judgment. The plaintiff contends that the ALJ (1) erred at step two by finding her bilateral proliferative diabetic retinopathy with macular edema non-severe, (2) discounted her symptom testimony without specific, clear, and convincing reasons, and (3) assessed her residual functional capacity (RFC) without any supporting medical opinion. She asks the court to remand for an award of benefits or, alternatively, for further proceedings with instructions to obtain medical-expert testimony.[4] The Commissioner defends the decision and contends that any remand should be for further proceedings.[5]

The court grants the plaintiff's motion in part, denies the Commissioner's cross-motion, reverses the Commissioner's final decision, and remands for further proceedings. The ALJ's reasons for disregarding the documented eye disease, and for discounting the symptom testimony (including a finding that the plaintiff spent two months in Mexico when the ALJ's own examination established that the trip was two weeks) are not supported by substantial evidence. A remand for an award of benefits nonetheless is not appropriate: no medical opinion addresses the plaintiff's functioning during the relevant period, and genuine conflicts between her testimony and contemporaneous treatment notes are for the agency to resolve in the first instance. On remand, the ALJ must obtain medical-expert evidence about the plaintiff's functional capacity from January 1, 2020, through April 30, 2021, and must reevaluate the record (including the ophthalmological evidence) consistent with this order.

---

[3] AR 18, 20. Because the plaintiff was not insured for disability insurance benefits from June 30, 2016, until April 1, 2022, an onset date earlier than May 1, 2021, would not change her disability-insurance entitlement, which the ALJ fixed at the April 1, 2022, insured date. AR 18, 24, 29. The ALJ nonetheless adjudicated, and the parties brief, the full period from January 1, 2020, through April 30, 2021.

[4] Mot. – ECF No. 10 at 7–21; Reply – ECF No. 16 at 2–11.

[5] Cross-Mot. – ECF No. 15 at 3–11.

United States District Court
Northern District of California

## STATEMENT

### 1. Procedural History

The plaintiff applied for disability insurance benefits and (protectively) for disabled widow's benefits on March 14, 2023, alleging disability beginning January 1, 2020.[6] The agency denied the claims initially on August 29, 2023, and on reconsideration on March 1, 2024, found her disabled as of December 4, 2023 (the date she began chronic hemodialysis and met Listing 6.03 for chronic kidney disease) but not before.[7] The plaintiff requested a hearing on the unfavorable portion of the determinations. ALJ Michael Cabotaje held a hearing on August 22, 2024 (the plaintiff testified by phone from the hospital, and her counsel appeared in person) and issued a partially favorable decision on September 24, 2024, which he amended on October 16, 2024, to correct the insured-status findings.[8] The Appeals Council denied review on August 15, 2025, making the amended decision the Commissioner's final decision.[9] The plaintiff timely sought judicial review under 42 U.S.C. § 405(g). All parties consented to magistrate-judge jurisdiction.[10] The matter is submitted on the parties' cross-motions without oral argument.[11]

### 2. The Benefits Framework and the Contested Period

Two undisputed features frame the appeal. First, for widow's benefits, the plaintiff is the unmarried widow of the insured wage earner and has attained age fifty. Her prescribed period began on November 7, 2013, and ended on November 30, 2020. To be entitled to widow's benefits, she must establish that her disability began on or before November 30, 2020.[12] Second, for disability insurance benefits, the plaintiff was insured from April 1, 2006, until June 30, 2016,

---

[6] AR 18.

[7] AR 18, 21–22, 27.

[8] AR 14–31 (amended decision), 32–54 (original decision), 55–89 (hearing transcript).

[9] AR 1–6.

[10] Consents – ECF Nos. 4–6.

[11] Civil L.R. 16-5; Mot. – ECF No. 10; Cross-Mot. – ECF No. 15; Reply – ECF No. 16.

[12] AR 18, 20; 42 U.S.C. § 402(e); 20 C.F.R. § 404.335.

and again from April 1, 2022, until March 31, 2025. Based on the May 1, 2021, onset, the ALJ found her entitled to those benefits effective April 1, 2022.[13] The practical stakes of the earlier-onset dispute thus lie with the widow's-benefits claim.

**3. Medical Evidence**

The medical exhibits span more than 4,700 pages; this summary is limited to the evidence the motions put at issue.[14]

*Eye disease.* In August 2019, the plaintiff developed floaters and then a vitreous hemorrhage in her right eye. A vitreoretinal specialist, Denise Kayser, M.D., diagnosed type 2 diabetes with bilateral proliferative diabetic retinopathy and macular edema (with dot-blot hemorrhages in all four quadrants of both eyes, exudates, clinically significant macular edema, and intraretinal microvascular abnormalities) and began intravitreal anti-VEGF (Avastin) injections "to prevent permanent vision loss."[15] The injections continued roughly every six weeks through the prescribed period and beyond. The specialist's notes document black spots and floaters in January and February 2020, an increase in macular edema with light sensitivity in May 2020, fluctuating blurry vision, difficulty focusing, and flashing lights with increased central and superior macular edema in July 2020, and stable or fluctuating blurry vision through the end of 2020 and into early 2021.[16]

*Diabetes and related conditions.* The record reflects poorly controlled diabetes before and throughout the relevant period.[17] In April 2020, the plaintiff lost her health insurance and went about three weeks without medications, including her diabetes medications.[18] In early May 2020 her appendix ruptured; she was hospitalized for five days with sepsis and "uncontrolled" hyperosmolar diabetes (her hemoglobin A1c was 13.6 and her post-operative glucose ran in the

[13] AR 18, 20, 24, 29.

[14] AR 356–5067; Cross-Mot. – ECF No. 15 at 9.

[15] AR 880–81, 2255; Mot. – ECF No. 10 at 8–9.

[16] AR 2271, 2273, 2275, 2277, 2283–97; Mot. – ECF No. 10 at 9–11.

[17] AR 22 (ALJ), 4306, 4315.

[18] AR 4306.

400s, requiring aggressive insulin treatment).[19] Her A1c remained well above the reference range of 4.0–5.7% (9.7% in November 2020 and 9.9% in February 2021), and her regimen escalated from oral agents to basal insulin and then, by early 2021, to high-dose basal plus mealtime insulin.[20] She was chronically hypertensive, reported recurrent nausea, and reported chronic diarrhea (attributed to her diabetes and its medications), with bowel movements every one to two hours at times.[21] Shortly after the prescribed period ended, she underwent a laparoscopic cholecystectomy (February 2021) and was hospitalized for four days with pyelonephritis and an acute kidney injury (April 2021).[22]

Some treatment notes from the period report improvement. On April 21, 2020, her blood sugars were "better"; on June 2, 2020, she was "starting to exercise" after the appendectomy; she joined a diabetes group in August 2020; her diabetes was "doing well" on October 8, 2020; and on November 18, 2020, her A1c was improving, she "felt good" on her medications, and she reported that she was going to Mexico and "doing a lot of activity."[23]

**4. The Administrative Hearing**

At the outset, counsel confirmed that there were no objections to the record and (after explaining that the only outstanding records were recent dialysis records relevant only to the already-established December 2023 listing date) that "in any other respects, the record's complete."[24] Counsel directed the ALJ to the vitreoretinal-specialist records at Exhibit 5F, which "document that she . . . has diabetic retinopathy" and "was undergoing shots in both eyes monthly from 2019."[25]

---

[19] AR 815–16, 859–60, 863, 1438–42.

[20] AR 359, 746–47, 834–35, 1575; Mot. – ECF No. 10 at 15, 18.

[21] AR 810, 879, 2269, 2273, 2277, 4254, 4257–58, 4289, 4291, 4297, 4313; Mot. – ECF No. 10 at 15–16, 18.

[22] AR 775, 1362–63, 3343.

[23] AR 22–23 (ALJ, citing the treatment notes); AR 359–60, 380, 4293, 4304.

[24] AR 62–63.

[25] AR 64.

United States District Court
Northern District of California

The plaintiff testified that she stopped working in October 2019. From 2017 to 2019 she had worked two jobs simultaneously, as a medical assistant and as a certified nursing assistant.[26] For 2020, she testified that her neuropathy "started getting bad" and her blood pressure "was so high," that she had constant diarrhea (treated with Imodium) that forced her "to run to the bathroom every single time," that the high blood pressure made her sick and made it "really hard . . . to concentrate," that her diabetes medications made her dizzy, nauseated, and achy, that she felt "very, very sick," could not cook or do laundry, and relied on friends and her brother for meals and groceries, and that she could not have sustained even a seated job.[27] She flew to Mexico in November 2020 ( "just for two weeks," she testified, not two months) with her brother, because her mother was sick and she "couldn't go by [her]self." She "stayed at the house and rested," and for one of the two weeks she was sick with low blood pressure.[28] As for her eyes, she testified that she began the injections in October 2019, that in 2020 she "couldn't focus too much in writing on the computer" because her "eyes started hurting like crazy" and she "had to be closed," that her vision improved with the shots but fluctuated with her uncontrolled blood sugars, that "in the beginning of 2020, they were very bad," and that meaningful improvement came only later, when her doctors "finally got the right medication."[29]

The vocational expert classified the past work as nurse assistant (DOT 355.674-014, medium, SVP 4) and medical assistant (DOT 079.362-010, light, SVP 6). A hypothetical person of the plaintiff's age, education, and work experience limited to light work could perform the medical-assistant job; a person limited to sedentary work could not perform any past work, and no skills transfer to sedentary work. A person absent three days per month could not sustain any

[26] AR 66–68.

[27] AR 70–74.

[28] AR 74–75.

[29] AR 75–80.

United States District Court
Northern District of California

employment.[30] The ALJ posed no hypothetical involving visual or other non-exertional limitations.[31]

**5. The ALJ's Findings**

At steps one through three, the ALJ found that the plaintiff had not engaged in substantial gainful activity since January 1, 2020. Her June-to-August 2022 stint as a medical assistant was a trial work period or unsuccessful work attempt "because the work ended due to the impairments." She had severe impairments of diabetes mellitus type II, hypertension, chronic kidney disease, hyperlipidemia, congestive heart failure, anemia, acute kidney injury, and obesity. No listing was met before December 4, 2023 (when she met Listing 6.03).[32] He found "[a]ny alleged visual impairment" non-severe: "There is no medical evidence of limitations. The claimant said that she started getting shots for her eyes in 2019, and since then her eyes have improved. This is consistent with her work as a medical assistant in 2022. The claimant did not mention any visual impairment in her initial disability report. In her functional report, she mentioned only the need for glasses."[33]

For the period before May 1, 2021, the ALJ assessed an RFC for the full range of light work. He acknowledged "poorly controlled diabetes" but found that "the record does not show any significant limitations from the claimant's impairments": she had "some temporary issues with her appendicitis and rectal fissure," but "for the most part, she reported doing well and being active."[34] He recounted the treatment notes summarized above (including an October 15, 2020, primary-care assessment of "diabetic retinopathy without macular edema" and the November 18, 2020, note, which he read as reporting that the plaintiff was "going to Mexico for two months and 'doing a lot

[30] AR 86–88.

[31] *Id.*

[32] AR 20–22, 27.

[33] AR 21 (citing Exs. 3E, 9E). The initial disability report is dated May 2023 and the function report February 2024. AR 24, 52.

[34] AR 22.

of activity'") and normal cardiac testing (a May 2020 echocardiogram and chest x-ray).[35] He found her testimony "not consistent with the medical evidence of record during this period": "Regarding the trip to Mexico in November 2020, the claimant said she was able to fly there by plane. She said her blood pressure while she was there dropped, but the medical evidence of record does not reflect this."[36] He concluded: "The claimant travelled to Mexico for two months in 2020. At times she reported doing well and had a high level of activity. These are consistent with light work activity." The RFC, he wrote, "is supported by the testimony from the hearing, the medical evidence in the record and the opinions of the Agency medical consultants."[37]

As to the medical opinions and prior administrative findings: the ALJ found Dr. Pham's August 2023 finding (that the plaintiff had no severe impairments before November 2020) "not persuasive" because "[t]he medical evidence of record supports a light residual functional capacity during the prescribed period," and Dr. Jone's February 2024 finding (insufficient evidence from the alleged onset date until the December 2023 listing date) only "partially persuasive."[38] He found the June 2023 statement of treating physician Barbara Vail-Spinosa, M.D. (that serious health conditions, most notably more than a year of severe, symptomatic blood-pressure swings, precluded work) "partially persuasive" because it was not a function-by-function analysis and did "not purport to say anything about the claimant's limitations during the DWB prescribed period."[39]

At step four, the ALJ found that before May 1, 2021, the plaintiff could perform her past relevant work as a medical assistant as actually and generally performed; alternatively, at step five, a full light RFC directs a finding of "not disabled" under Rule 202.14 of the Medical-Vocational Guidelines (she was 52 on the alleged onset date, with at least a high-school education).[40] As of

---

[35] *Id.*

[36] AR 23.

[37] AR 23–24.

[38] AR 26–27. The decision states that the record shows a light RFC "from the alleged onset date to November 30, 2022," an apparent typographical error for the period at issue. AR 27.

[39] AR 26.

[40] AR 27–28.

United States District Court
Northern District of California

May 1, 2021 (when she developed lower-extremity ulcerations and her condition worsened), he assessed a sedentary RFC, under which Rules 201.14 and 201.06 direct a finding of "disabled."[41] The result: disability insurance benefits with a May 1, 2021, onset (entitlement effective April 1, 2022), and no widow's benefits.[42]

## LEGAL STANDARDS

### 1. Standard of Review

Under 42 U.S.C. § 405(g), the court may affirm, modify, or reverse the Commissioner's final decision, with or without remanding for a rehearing. The ALJ's factual findings are conclusive if supported by substantial evidence: "more than a mere scintilla," meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 98 (2019) (cleaned up). The standard is deferential: where the evidence is susceptible to more than one rational interpretation, the ALJ's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). But the court reviews "only the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which he did not rely." *Garrison v. Colvin*, 759 F.3d 995, 1010 (9th Cir. 2014); *accord Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225–26 (9th Cir. 2009). The court will not reverse for harmless error — error that is "inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (cleaned up), *superseded by regulation on other grounds as stated in Ferguson v. O'Malley*, 95 F.4th 1194, 1203 n.20 (9th Cir. 2024). The burden of showing harm falls on the party attacking the agency's determination. *Molina*, 674 F.3d at 1111 (quoting *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

---

[41] AR 24, 28.

[42] AR 28–29.

**2. The Five-Step Analysis and Disabled Widow's Benefits**

The five-step sequential evaluation governs both claims: (1) whether the claimant is engaged in substantial gainful activity; (2) whether she has a severe, medically determinable impairment; (3) whether the impairment meets or equals a listing; (4) whether, given her RFC, she can perform past relevant work; and (5) whether she can adjust to other work that exists in significant numbers in the national economy. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden at steps one through four; the burden of production shifts to the Commissioner at step five. *Ford v. Saul*, 950 F.3d 1141, 1148–49 (9th Cir. 2020).

For disabled widow's benefits, the claimant additionally must show that her disability (assessed under the same standard) began on or before the end of the prescribed period. 42 U.S.C. § 402(e); 20 C.F.R. § 404.335(c). Here, that date is November 30, 2020.[43]

**ANALYSIS**

**1. The ALJ Erred at Step Two/the RFC by Disregarding the Documented Eye Disease**

Step two is "a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An ALJ may find an impairment non-severe "only when his conclusion is clearly established by medical evidence." *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005) (cleaned up) (quoting SSR 85-28); *accord Glanden v. Kijakazi*, 86 F.4th 838, 844 (9th Cir. 2023) (the step-two showing is a "low bar," and even a record that "paints an incomplete picture" can clear it) (cleaned up). Basic work activities include "seeing." 20 C.F.R. § 404.1522(b)(2). An error at step two is harmless if the ALJ resolves the step in the claimant's favor and accounts for the impairment's limitations later in the sequence. *Buck v. Berryhill*, 869 F.3d 1040, 1048–49 (9th Cir. 2017); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). Neither condition for harmlessness is met here.

First, the finding that "[t]here is no medical evidence of limitations" mischaracterizes the record. A retinal specialist diagnosed active, bilateral proliferative diabetic retinopathy with

[43] AR 18, 20.

macular edema and treated it with intravitreal injections roughly every six weeks throughout the prescribed period, and the specialist's notes document blurred vision, floaters, light sensitivity, difficulty focusing, and increased macular edema during 2020.[44] Counsel specifically flagged those records at the hearing; the decision nowhere cites them.[45] Step two does not require a physician-drafted, function-by-function assessment; it asks whether the medical evidence clearly establishes that the impairment had no more than a minimal effect on the ability to do basic work activities (here, seeing). *Webb*, 433 F.3d at 687. A vision-threatening disease of both eyes, requiring serial injections and producing documented visual symptoms through the period, is not "clearly established" as a slight abnormality.

Second, the "improvement" rationale rests on an incomplete account of the testimony and the treatment records. The ALJ relied on the plaintiff's "yes" to his question whether her vision "has been better" since the 2019 shots. But in her immediately following answers she clarified that she had many vision issues during 2020, that her eyes "in the beginning of 2020 . . . were very bad," and that meaningful improvement came only when her doctors "finally got the right medication."[46] The ophthalmology notes match that account: increased macular edema in May and July 2020 and persistent blurred or fluctuating vision through year-end.[47] "[S]ome improvement does not mean that the person's impairments no longer seriously affect her ability to function in a workplace." *Ghanim v. Colvin*, 763 F.3d 1154, 1162 (9th Cir. 2014) (cleaned up) (quoting *Holohan v. Massanari*, 246 F.3d 1195, 1205 (9th Cir. 2001)).

Third, the 2022 work cannot carry the finding. The ALJ himself found that the June-to-August 2022 job was a trial work period or unsuccessful work attempt that "ended due to the impairments."[48] An unsuccessful work attempt is not evidence of the ability to engage in substantial gainful activity, 20 C.F.R. § 404.1574(c)(1), and in any event a job held eighteen

---

[44] AR 2255, 2271–97; *supra* Statement § 3.

[45] AR 64; AR 21–24.

[46] AR 76–79.

[47] AR 2275, 2277, 2283–91.

[48] AR 20.

months after the prescribed period closed says little about the plaintiff's vision in 2020, particularly given her testimony that the improvement that made the 2022 attempt possible came later.[49]

Fourth, the disability reports do not fill the gap. The initial report (May 2023) and function report (February 2024) postdate the relevant period by years (after, on the plaintiff's account, her vision had improved) and a lay claimant's omission of an impairment from an agency form cannot "clearly establish[]" non-severity in the face of contemporaneous specialist treatment. The Commissioner adds that the plaintiff listed reading as a hobby in the function report, but the ALJ invoked reading only in evaluating her mental functioning; the court cannot affirm on that post-hoc ground.[50]

The error was not harmless because the ALJ did not account for the eye disease anywhere later in the sequence. The RFC contains no visual limitation; the decision never discusses the ophthalmological records at any step; the step-four finding rests on a job that requires frequent near acuity; and the alternative step-five finding applies the grids to a full range of light work without vocational-expert testimony on any non-exertional limitation.[51] The plaintiff thus identifies concrete limitations (an inability to sustain the near-vision demands of her past work) that the ALJ never evaluated. That showing satisfies her burden under *Molina* and *Shinseki*. Whether and how the eye disease limited her functioning during the relevant period is for the ALJ to determine in the first instance. But he must actually evaluate the evidence to do it.

**2. The ALJ Did Not Give Clear and Convincing Reasons for Discounting Symptom Testimony**

Where, as here, a claimant produces objective medical evidence of impairments that could reasonably be expected to produce her symptoms, and there is no affirmative finding of

[49] AR 77–79; Reply – ECF No. 16 at 4.

[50] Cross-Mot. – ECF No. 15 at 4, 7; AR 21 (paragraph-B discussion); *Bray*, 554 F.3d at 1225–26.

[51] AR 22–24, 27–28, 86–88; Mot. – ECF No. 10 at 12–13 (Selected Characteristics of Occupations requirements for DOT 079.362-010, which the Commissioner does not dispute).

malingering, an ALJ may discount her testimony about symptom severity only for "specific, clear and convincing reasons." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (cleaned up); *Garrison*, 759 F.3d at 1014–15. "General findings are insufficient": the ALJ must "identify what testimony is not credible and what evidence undermines the claimant's complaints." *Brown-Hunter v. Colvin*, 806 F.3d 487, 493 (9th Cir. 2015) (cleaned up). Inconsistency with the objective medical record is a permissible factor but cannot be the sole ground. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *cf. Smartt v. Kijakazi*, 53 F.4th 489, 494–95 (9th Cir. 2022). Daily activities may support an adverse finding where they contradict the testimony or meet the threshold for transferable work skills. *Molina*, 674 F.3d at 1112–13; *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998). The ALJ's reasons here (that the record shows no significant limitations and "for the most part" reports "doing well and being active," and that the Mexico trip and associated activity are "consistent with light work") do not meet the standard.[52]

The Mexico rationale rests on a demonstrable misreading of the record. The ALJ twice stated as fact that the plaintiff "travelled to Mexico for two months," relying on the November 18, 2020, treatment note.[53] But at the hearing the ALJ asked her directly, "You went for two months?", and she answered, "No, just for two weeks," explaining that she flew with her brother because she could not travel alone, stayed at her mother's house and rested, and was sick with low blood pressure for one of the two weeks.[54] The decision never mentions that testimony, and the record corroborates it: she was back in California for an eye injection on December 8, 2020.[55] An adverse finding built on a fact that the ALJ's own examination refuted is not convincing. And a two-week trip (spent resting at a sick mother's house, with an escort) neither contradicts the symptom testimony nor resembles the standing, walking, lifting, and sustained attendance that full-time light work requires. *Reddick*, 157 F.3d at 722; *cf. Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685,

[52] AR 22–24. The Commissioner preserves an objection to the clear-and-convincing standard while acknowledging that it binds this court. Cross-Mot. – ECF No. 15 at 6 n.2.

[53] AR 23.

[54] AR 74–75.

[55] AR 2289; Mot. – ECF No. 10 at 17.

United States District Court
Northern District of California

693–94 (9th Cir. 2009). The related point (that "the medical evidence of record does not reflect" her testimony that her blood pressure dropped in Mexico) demands corroboration that could not exist: she was in Mexico, not at her Santa Rosa clinic.[56]

The "doing well and being active" rationale cherry-picks the record. The cited notes are real, but they sit alongside (in the same period, and sometimes on the same pages) an emergency appendectomy with sepsis and "uncontrolled" hyperosmolar diabetes (A1c 13.6, glucose in the 400s), an A1c still at 9.7% in the very November 18 note the ALJ quoted, an escalating insulin regimen, continuing six-week eye injections, and chronic-diarrhea complaints, followed within weeks of the prescribed period's close by a cholecystectomy and a four-day pyelonephritis admission.[57] Improvement notes "must be read in context of the overall diagnostic picture," and "occasional symptom-free periods . . . are not inconsistent with disability." *Ghanim*, 763 F.3d at 1162 (cleaned up); *Garrison*, 759 F.3d at 1017. And "starting to exercise" was a goal (walking thirty minutes, three times a day), not a documented achievement; either way, it is not evidence of the capacity for light work's "good deal of walking or standing." 20 C.F.R. § 404.1567(b).[58]

Most fundamentally, the decision never identifies which testimony it rejects or connects any evidence to it. The plaintiff's central testimony (constant diarrhea requiring urgent, repeated bathroom access; nausea, dizziness, and achiness from her medications; difficulty concentrating; reliance on others for meals and chores; inability to sustain even seated work) goes unmentioned, and normal cardiac testing does not speak to any of it.[59] That is the "general findings" error *Brown-Hunter* forbids. 806 F.3d at 493. The Commissioner's added rationales ("routine" and conservative treatment, non-compliance, and the reading hobby) appear nowhere in the decision and cannot sustain it. *Bray*, 554 F.3d at 1225–26. "Routine" would in any event be a hard label for

[56] AR 23.

[57] AR 359, 746–47, 775, 815–16, 859–63, 1362–63, 1438–42; *supra* Statement § 3.

[58] AR 4291–93; Mot. – ECF No. 10 at 16–17.

[59] AR 22–24, 70–74.

a period marked by two hospitalizations, a surgery, serial intravitreal injections, and an insulin escalation. The court reverses on this ground as well.[60]

**3. The Remedy Is a Remand for Further Proceedings**

**3.1 The Credit-as-True Conditions Are Not Satisfied**

When a court reverses, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (cleaned up). A remand for an award of benefits requires that (1) the record be fully developed such that further proceedings would serve no useful purpose, (2) the ALJ failed to provide legally sufficient reasons for rejecting evidence, and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled (and even then, the court retains discretion to remand for proceedings if "the record as a whole creates serious doubt" about disability). *Garrison*, 759 F.3d at 1021; *Leon v. Berryhill*, 880 F.3d 1041, 1045–47 (9th Cir. 2017).

The second condition is satisfied, but the first and third are not. The record is not fully developed: no medical opinion assesses the plaintiff's functioning during the relevant period. The ALJ rejected Dr. Pham's non-severity finding and found Dr. Jone's insufficient-evidence finding unpersuasive as to the period, and Dr. Vail-Spinosa's statement, by the ALJ's own account, says nothing about it.[61] The plaintiff's own alternative request (that the court order medical-expert development on remand) concedes that enhancement of the record would be useful.[62] Genuine conflicts also remain for the agency to resolve: her testimony against the contemporaneous "doing well," "felt good," and "doing a lot of activity" notes, and against Dr. Pham's finding of no severe impairment before November 2020. Where "there is conflicting evidence, and not all essential factual issues have been resolved," a benefits remand is inappropriate. *Treichler*, 775 F.3d at 1101,

[60] Cross-Mot. – ECF No. 15 at 7–8; Reply – ECF No. 16 at 6–7. The Commissioner also does not respond to the diarrhea testimony. Reply – ECF No. 16 at 6.

[61] AR 26–27.

[62] Mot. – ECF No. 10 at 20–21; Reply – ECF No. 16 at 8–9.

United States District Court
Northern District of California

1105. For the same reasons, crediting the testimony would not compel a disability finding: the agency would still have to translate the symptoms into an RFC and fix an onset date within the prescribed period — quintessential agency factfinding — and the same conflicts create serious doubt. *Id.*; *Leon*, 880 F.3d at 1047–48.

**3.2 On Remand, the ALJ Must Obtain Medical-Expert Evidence**

The Commissioner's forfeiture argument (that counsel told the ALJ the record was complete, *Meanel v. Apfel*, 172 F.3d 1111, 1115 (9th Cir. 1999)) fails on the facts and the law. Factually, counsel's statement was qualified: he said the record was complete "in any other respects" after explaining that the only outstanding records concerned the already-established 2023 listing date, and he affirmatively directed the ALJ to the retinal-specialist records.[63] And the statement came before the ALJ rejected every prior administrative medical finding bearing on the period; counsel could not forfeit an objection to an evidentiary gap the decision had not yet created.[64] Legally, the Ninth Circuit recently held that *Meanel*'s bright-line issue-exhaustion rule did not survive *Carr v. Saul*, 593 U.S. 83 (2021); the question is whether the claimant, in the context of the agency's inquisitorial proceedings, bore responsibility for developing the issue. *O'Brien v. Bisignano*, 142 F.4th 687, 695–99 (9th Cir. 2025). She did not: the ALJ bears an independent duty to develop the record where the evidence is ambiguous or inadequate to allow proper evaluation, *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *Ford*, 950 F.3d at 1156, and the plaintiff relies on the existing record's gap, not on new evidence first presented in court. *Cf. O'Brien*, 142 F.4th at 699–700 (distinguishing *Meanel* on that basis).

On the merits, the instruction is warranted. Having found the prior administrative findings unpersuasive, the ALJ assessed a light RFC for the relevant period with no supporting medical assessment of function, while simultaneously, and inconsistently, stating that the RFC was "supported by . . . the opinions of the Agency medical consultants."[65] *Farlow v. Kijakazi* does not

---

[63] AR 62–64.

[64] Reply – ECF No. 16 at 10–11.

[65] AR 24, 26–27.

United States District Court
Northern District of California

license that approach: it presumes that ALJs are "capable of independently reviewing and forming conclusions about medical evidence" in weighing opinions, 53 F.4th 485, 488 (9th Cir. 2022), not that an ALJ may reject every medical assessment of a period and then construct function-by-function findings from raw clinical data alone.[66] And the ALJ's own framing of the case — "the issue here is when did the claimant have the RFC for sedentary work" — is a question about the onset of a slowly progressive disease, precisely the setting in which medical-expert evidence is appropriate.[67] The court therefore directs the development set out in the Conclusion.

## CONCLUSION

The court grants the plaintiff's motion for summary judgment in part, denies the Commissioner's cross-motion, reverses the Commissioner's final decision, and remands the case under sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this order.

This resolves ECF Nos. 10 and 15.

**IT IS SO ORDERED.**

Dated: September 15, 2026



LAUREL BEELER
United States Magistrate Judge

[66] Reply – ECF No. 16 at 8–9 (collecting district-court decisions).

[67] AR 88; *cf.* SSR 18-01p, 2018 WL 4945639, at *6–7 (Oct. 2, 2018) (an ALJ "may call on the services of an ME" (medical expert) to help infer the date of first disability).